UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISMAEL MOREIRA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>　　　　　Defendant. | Case No. 1:23-cv-03442-JSR |

**REPLY MEMORANDUM IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION**

JONES DAY
250 VESEY STREET
NEW YORK, NEW YORK  10281
TEL: (212) 326-3939

ATTORNEYS FOR DEFENDANT
EXPERIAN INFORMATION SOLUTIONS, INC.

## **INTRODUCTION**

Plaintiff does not dispute that he enrolled in CreditWorks and, in order to do so, clicked a button on the sign-up page manifesting his assent to be bound by the membership's Terms of Use. Nor does he dispute that the form and layout of the website placed him on notice that he was agreeing to the Terms of Use by clicking the signup button (as every court to consider such issue has found). He does not dispute that the Terms of Use has an Arbitration Agreement, which requires him "to arbitrate all disputes and claims between us arising out of or relating to this Agreement to the maximum extent permitted by law[.]" He does not dispute that the Terms of Use defines "us" to mean Plaintiff and ECS, with the term "ECS" specifically defined to mean and include ECS's "affiliates." He does not dispute that during the entire time that he has been enrolled in CreditWorks, EIS has been an affiliate of ECS, thus entitling EIS to enforce the Arbitration Agreement. And, he does not dispute that every version of the Terms of Use delegates arbitrability issues to an arbitrator, as well as incorporates the AAA rules. Given the foregoing facts, the claims in this case must be compelled to arbitration pursuant to Plaintiff's written agreement, and any dispute over the arbitrability of those claims must be resolved by an arbitrator.

Notwithstanding this record, Plaintiff insists that his claims are not subject to arbitration because the Arbitration Agreement is substantively and procedurally unconscionable. Yet, the very unconscionability arguments that Plaintiff's opposition presses are lifted directly from the opposition brief his counsel filed in *Kinkle v. Experian Information Solutions, Inc.*, No. 1:23-cv-00358-JMS-TAB, 2023 WL 4105804 (S.D. Ind. June 21, 2023). In evaluating the *same* contract and enrollment process at issue here, the district court in *Kinkle* rightly rejected every one of those arguments. *Id*. at *2-3. They have not improved with time or repetition.

The motion to compel arbitration should be granted.

**LEGAL ARGUMENT**

I. **THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE**

    A. **There Is No Substantive Unconscionability**

Although *Kinkle* evaluated unconscionability under Indiana law, the standard in New York is the same: An unconscionable bargain is one that "no person in his or her senses and not under delusion would make on the one hand, and as no honest and fair person would accept on the other…" *Christian v. Christian*, 42 NY2d 63, 71 (1977); *Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 483 (S.D.N.Y 2011) (Rakoff, J.) (holding same); *see also Weaver v. Am. Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971) (same standard). In New York, "[t]he substantive element of unconscionability entails an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Emigrant Mortgage Co. v. Fitzpatrick*, 29 Misc. 3d 746, 753 (N.Y. Sup. Ct. 2010)).

As in *Kinkle*, Plaintiff here does not argue that the Arbitration Agreement in the CreditWorks Terms of Use is "oppressively one-sided" or "unreasonably favorable" to EIS. *Kinkle*, 2023 WL 4105804, at *2. Nor, could he. As *Kinkle* explains, the "agreement imposes a ***bilateral*** obligation to arbitrate claims that relate to or arise out of the contract." *Id*. (emphasis added); *see also* ECF No. 19 [Declaration of David Williams ("Williams Decl.")], Ex. 4. *Kinkle* further explains that "CreditWorks members regularly initiate arbitration claims ***against EIS*** pursuant to the terms of use, alleging violations of the FCRA"—the very claims that Plaintiff pleads in this case. *Kinkle*, 2023 WL 4105804, at *2; *see also* Reply Declaration of John A. Vogt ("Reply Vogt Decl."), ¶ 2. Thus, not only do all parties to the contract recognize that FCRA claims are arbitrable, but they agree that the arbitrability of such claims is a bilateral obligation. Hence, there is no one-sided obligation, and the agreement is not substantively unconscionable.

*See Nayal v. HIP Network Services IPA, Inc.*, 620 F. Supp. 2d 566, 573 (S.D.N.Y. 2009) (declining to find substantively unconscionable a contract which equally bound both parties to arbitration).

Nonetheless, Plaintiff insists that the Arbitration Agreement is unconscionably overbroad—indeed, "infinite" in scope—resting his argument upon the same series of farfetched hypotheticals raised and rejected in *Kinkle*—to wit: if he was "vacationing in Brazil and was hit by a car" that was owned by "MOVA Sociedade de Empréstimo entre Pessoas S.A.–an Experian-owned company," his personal injury claims would be subject to arbitration under the CreditWorks Terms of Use. ECF No. 20 at 9. As *Kinkle* rightly points out, "[t]he arbitration agreement contained within the terms of use limits the scope of the agreement to 'disputes and claims between us arising out of or relating to this Agreement.' . . . Thus, the arbitration agreement is not infinite in scope." *Kinkle*, 2023 WL 4105804, at *2.

This conclusion flows directly from the text of the agreement. The contract provides that "ECS and you agree to arbitrate all disputes and claims between us ***arising out of or relating to this Agreement*** to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration." Williams Decl., Ex. 4 [ECF 19-6] at 8 (emphasis added.) As *Kinkle* explains, the obligation to arbitrate falls equally upon EIS as it does Plaintiff, and in his opposition, Plaintiff does not contend otherwise. Instead, Plaintiff argues that the above-quoted clause somehow extends to: (1) personal injury claims involving car accidents with ECS affiliates located in Brazil; and even (2) a "property dispute" between Plaintiff and "a neighbor who happened to be employed by ECS." ECF No. 20 at 9-10. Plaintiff chides that this is "absurd." *Id*. at 12. It surely is. Neither hypothetical set of claims "arises out of or relates to" the agreement or the services provided thereunder. Instead, the "absurd results" that Plaintiff

4

points to only could arise "from an arbitration clause not tethered to an underlying agreement." *Wexler v. AT&T Corp.*, 211 F. Supp. 3d 500, 503 (S.D.N.Y. 2016) (emphasis added).

Thus, *Kinkle* rejected Plaintiff's argument that the Arbitration Agreement in the CreditWorks Terms of Use "would require Plaintiff to arbitrate any conceivable claim []he might have against an incalculable number of entitles completely unknown to h[im] at the time of the 'agreement' between Plaintiff and a complete non-party to this action." *Kinkle*, 2023 WL 4105804, at *2; Opp. at 4 (making identical argument). *Kinkle's* conclusion is in accord with established precedent—both in New York and elsewhere—holding that an arbitration agreement, like the one at issue here, that is limited to "disputes and claims between us ***arising out of or relating to this Agreement***" is not "infinite" in scope because it is "limited to disputes concerning [the] agreement." *See, e.g.*, *Thomas v. Cricket Wireless, LLC*, 506 F. Supp. 3d 891, 904 (N.D. Cal. 2020); *see also Wexler*, 211 F. Supp. 3d at 503 (same); *Cooper v. Equifax Information Services, LLC*, 2020 WL 5848667 (D. Nev. Sept. 30, 2020) (same).

Moreover, even if the arbitration agreement applied to "all disputes and claims" unmoored to the contract, that still would not be grounds to strike the agreement. *See Starace v. Lexington Law Firm*, No. 1:18-cv-01596-DAD-SKO, 2019 WL 2642555, at *8 (N.D. Cal. June 27, 2019). In *Starace*, the court rejected an over-breath challenge to a clause applying to "all disputes and claims" between the parties because "plaintiff's claims against [defendant] are related to the Agreement." *Starace*, 2019 WL 2642555, at *8. Here, as *Kinkle* points out, "there is no question that the FCRA claims [plaintiff] brought against EIS plainly relate to the parties' agreement, so there is no concern of overbreadth in this case." *Kinkle*, 2023 WL 4105804, at *2; *see also id*. at *3 ("the agreement is valid and enforceable, and the [FCRA] claims in [plaintiff's] complaint are covered claims that must be submitted to arbitration").

Plaintiff's New York authorities are in accord with *Kinkle*. In *Aquino v. Alexander Capital, LP*, No. 21-cv-1355 (JSR), 2023 WL 2751541 (S.D.N.Y. Mar. 31, 2023) (Rakoff, J.), this Court explained that agreements that are "infinite" in scope are not unenforceable where, as here, the claims relate to the subject matter of the agreement. The court in *McFarlane v. Altice USA, Inc.*, 524 F. Supp. 3d 264, 269 (S.D.N.Y. 2021), reached the same conclusion, holding that notwithstanding its scope, "the arbitration clause at issue does not require arbitration of claims that lack a nexus to the cable services agreement." And, as *Kinkle* points out, "there is no question that the FCRA claims [plaintiff] brought against EIS plainly relate to the parties' agreement[.]"[1]

The non-New York authorities that Plaintiff cites do not compel a different outcome. The arbitration agreement in *Mey v. DIRECTV, LLC*, 2021 WL 973454 (N.D. W.Va. Feb. 12, 2021), just like the arbitration clause in *Thomas*, applied to "all disputes and claims," unmoored to whether they were related to the parties' agreement. *Id.* at *8–11. Like *Thomas*, the district court in *Mey* expressly distinguished that type of "infinite" clause from those, like here, that are confined to claims that relate to or arise out of the parties' agreement. *Id.* Like *Thomas*, *Mey* found that that the latter were enforceable and not overbroad. *Id.* Thus, far from assisting Plaintiff, *Mey* undermines Plaintiff's claim of over-breath.

Citing *Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), Plaintiff contends that an arbitration agreement should be construed to avoid absurd results. Opp. at 7. Yet, the absurd results that Plaintiff posits (*e.g.*, having to arbitrate disputes related to personal injuries or property damage) only can obtain where the contract's express scope qualifier—"arising out of or relating

---

[1] As in *Kinkle*, Plaintiff here says that the number of parties that can enforce the Arbitration Agreement encompasses potentially millions of parties. ECF No. 20 at 10; *see also id.* (arguing that the agreement is so broad that she would be "subject to arbitration . . . with respect to any claim she has at any time against users of the 'Services' and/or 'Websites'"). That is not accurate. The breadth of the Arbitration Agreement is textually limited to those as-defined parties that have a dispute or claim with Plaintiff or EIS that relates to or arises out of the Agreement.

to this Agreement"—is omitted from the agreement. Plaintiff cannot argue that a contract is unconscionably overbroad by ignoring the very language of the agreement that expressly limits its scope. Plaintiff also misapprehends *Revitch*. That case involved an arbitration agreement that defined AT&T to include its "affiliates," yet at the time of the contract, DirecTV was **not** an affiliate of AT&T. Instead, AT&T acquired DirecTV *seven years later*. The court concluded that DirecTV could not enforce the arbitration agreement as party or third party beneficiary because it was not an affiliate at the time Plaintiff signed up with AT&T and the scope of the AT&T agreement had nothing whatsoever to do with the services that Plaintiff obtained from DirecTV seven years later. But even under that fact pattern—which bears no resemblance to the case at hand—the court noted that "[h]ad the wireless services agreement stated that 'AT&T' refers to 'any affiliates, both present and future,' we might arrive at a different conclusion." *Id*. at 718. Unlike in *Revitch*, (1) EIS indisputably was an affiliate of ECS at the time Plaintiff enrolled, (2) EIS is referenced throughout the contract (over 30 times), (3) the contract has an entire section on FCRA consents, and (4) in order to obtain 24/7 access to his EIS credit file, Plaintiff provided FCRA consent to enable EIS to furnish credit information to him. *See* Williams Decl., Ex. 4 at [ECF No. 19-6] at 3 ("PERMISSIBLE PURPOSES AND CONSENTS"). That is why the court in *Kinkle* concluded that FCRA claims "plainly relate to the parties' agreement." *Kinkle*, 2023 WL 4105804, at *2. Thus, compelling arbitration with an affiliate that is intimately involved in the parties' agreement does not give rise to the unique "absurdity" that existed in *Revitch*.

Instead, the facts at hand align with those in *Belyea v. GreenSky, Inc.*, Case No. 20-cv-01693-JSC, 2021 WL 1338552 (N.D. Cal. Apr. 9, 2021). There, the district court explained that *Revitch* was inapplicable because, like here, the party moving to compel arbitration was an affiliate at the time the plaintiff enrolled. 2021 WL 1388552, at *2–3. And, like here, the contract in

7

*Belyea* specified that "Claims … that arise between you and us will be resolved through binding arbitration," and it defined "us" to include "any corporate parent, wholly or majority owned subsidiaries, affiliates, … and any third party providing any product, service or benefit in connection with the Agreement." *Id*. The court rejected plaintiff's argument that GreenSky, the loan servicer, could not enforce the agreement—holding that because GreenSky "f[e]ll within the Arbitration Provision's definition of 'us,'" it qualified as a "party" that could "move to compel arbitration." *Id*. at *3. Plaintiff cites no contrary authority.

Plaintiff also asserts that EIS's attempt to enforce the Arbitration Agreement is itself a "prime example" of why the contract is "grossly unreasonable" because Plaintiff sought CreditWorks for the purposes of monitoring his credit report, and not for consumer reporting services. ECF No. 20 at 12-13. The argument is belied by the text of the agreement and the record evidence. Again, to enroll in CreditWorks, Plaintiff was required to provide express written consent under the FCRA to obtain credit information from EIS in his credit file on a 24/7 basis. Williams Decl., Ex. 4 [ECF No. 19-6] at 3. EIS, in turn, provided him with credit reports, credit risks scores, and credit alerts. *Id*. And, if Plaintiff believed that there was an inaccurate item of information in his EIS credit file, he could even make a FCRA credit dispute with EIS through CreditWorks. *Id*. Given its role in the provision of the services, EIS clearly is an affiliate contemplated within the scope of the agreement and can compel arbitration of claims that fall within the Agreement's subject matter. As the scope of the agreement expressly relates to consumer reporting services, *see Kinkle*, 2023 WL 4105804, at *2, there is nothing unconscionable about EIS moving to compel arbitration of FCRA claims pursuant to the contract, as scores of other CreditWorks members regularly have done **against EIS**. *See* Reply Vogt Decl., ¶ 2.[2]

---

[2] The law review article Plaintiff cites does not suggest otherwise. Instead, it explains that an arbitration clause that is "limited to disputes arising from or related to the transaction or contract at issue" is not infinite.

In sum, by limiting its scope to claims and disputes that relate to or arise out of the CreditWorks Terms of Use, and imposing a bilateral agreement to arbitrate such claims upon Plaintiff and EIS, the Arbitration Agreement is not substantively unconscionable.

### B. There Is No Procedural Unconscionability

For procedural unconscionability to apply, "the process of contract formation must have deprived the disadvantaged party of meaningful choice." *Clinton*, 824 F. Supp. 2d at 483. Plaintiff insists that the agreement is procedurally unconscionable, and posits five arguments that courts, in construing the same contract, already have rejected. *See Kinkle* 2023 WL 4105804, at *2-3.

First, in order to be an enforceable contract, EIS was not required to compel Plaintiff to read the agreement before he provided his assent. *Marciano v. DCH Auto Group*, 14 F. Supp. 3d 322, 330-31 (S.D.N.Y) (collecting cases). Moreover, as EIS's motion explained, every court to construe the CreditWorks signup process has concluded that the layout of the website placed users on notice that they were agreeing to be bound by the Terms of Use. *See* ECF No. 18 at 16.

Second, Plaintiff's assertion that he could not bargain the Terms of Use does not make the agreement unconscionable. *Clinton*, 824 F. Supp. 2d at 483 (mere inequality in bargaining power is not sufficient to invalidate an arbitration agreement). Instead, Plaintiff was required to show inequality in bargaining plus "high pressure tactics," *see id.* at 484, which he did not do.

Third, Plaintiff's contention that in order to get a "free" Experian credit score on a "regular" basis, he must enroll in CreditWorks, *see* ECF No. 20 at 18, is insufficient to invalidate the agreement. *Clinton*, 824 F. Supp. 2d at 484 (explaining that a contract is not unenforceable merely because one party enjoys advantages over another).[3]

Fourth, Plaintiff's contention that EIS can "unilaterally modify" the Arbitration Agreement

---

[3] Moreover, despite his contrary protestations, Plaintiff has many other credit monitoring options in the marketplace—*e.g.*, LifeLock, Credit Karma, Identity Guard, Aura.

9

at any time is belied by the express terms of the agreement. While the contract allows for amendments, they are ***not*** unilateral. Instead, Plaintiff must accept the changes by continuing to use the service, *see* Williams Decl., Ex. 3 at 31 ["AMENDMENTS"], which is a well-recognized mode of acceptance. *See Gillam v. Branch Banking and Trust Company of Virginia*, 2018 WL 3744019, at *3 (E.D. Va. Aug. 7, 2018) ("Contracts can contain provisions saying that continued use will bind parties to modified contract terms.").[4]

Fifth, Plaintiff repeats his arguments on substantive unconscionability, falsely contending that because the agreement is "infinite," it is contrary to public policy and unenforceable. ECF No. 20 at 18-19. As demonstrated, because the clause is "tethered to an underlying agreement," *see Mey*, 2021 WL 973454, at *8, it neither is "infinite" nor unconscionable.[5]

## II. THE DELEGATION CLAUSE IS ENFORCEABLE

Plaintiff argues that the delegation clause "is unconscionable for the same reasons outlined above with respect to the ECS Arbitration Agreement." ECF No. 20 at 19-20. But the Arbitration Agreement is not unconscionable, and there is nothing improper about delegating arbitrability and scope issues to an arbitrator. *Henry Schein Inc. v. Archer & White Sales Inc.,* ––– U.S. –––, 139 S. Ct. 524, 529, 202 L.Ed.2d 480 (2019). The delegation clause is enforceable.

## CONCLUSION

The Motion should be granted, and case stayed until arbitration has been completed

---

[4] Furthermore, the Terms of Use forbids any amendments to the Arbitration Agreement for "pending disputes" absent express written consent of all parties. Williams Decl., Ex. 4 [ECF No. 19-6] at 10 (sub. (g)) ("[N]o amendment will retroactively modify the parties' agreed-to dispute resolution provisions of this Agreement for then-pending disputes, unless the parties expressly agree otherwise in writing."). This procedural safeguard undermines any assertion that EIS's ability to amend the contract amounts to procedural unconscionability.

[5] Plaintiff also says that the arbitration clause in *Mey*—which applied to "all disputes and claims" unconstrained to the contract—is "less overbroad" than the Arbitration Agreement here, which is textually limited to claims that relate to, or arise out of, the agreement. ECF No. 20 at 19. That representation is self-evidently false.

Dated: June 26, 2023                    JONES DAY

                                        By: */s/ Paxton J. Lozano*
                                            Paxton J. Lozano

                                        Attorneys for Defendant
                                        EXPERIAN INFORMATION SOLUTIONS, INC.