

**Levi Y. Eidelman | Attorney**
P: (480) 626-1333 | D: (718) 360-0763
E: leidelman@consumerattorneys.com

August 21, 2023

**VIA ECF**
Honorable Arun Subramanian
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007-1312

        RE:    *Ismael Moreira v. Experian Information Solutions, Inc.*
                  Southern District of New York, 1:23-cv-03442-AS

Dear Judge Subramanian:

      Pursuant to Your Honor's Order (ECF No. 26), Plaintiff Ismael Moreira ("Plaintiff") hereby submits his letter brief in opposition to defendant's Motion to Compel Arbitration:

**I.**    **Plaintiff's claims have a nexus to CreditWorks**.

      Plaintiff's claims do not arise out of or otherwise have some nexus to his enrollment in CreditWorks. Plaintiff sought CreditWorks for the purpose of monitoring his credit report. He was not seeking consumer reporting services, nor could he seek such services from CreditWorks, as they do not offer any such services.[1] Plaintiff's complaint in the instant action (ECF No. 1) omits any mention of CreditWorks, and for good reason: each event giving rise to Plaintiff's claim against Experian occurred wholly separate and apart from CreditWorks. First, Experian's violation of 15 U. S.C. § 1681e(b) in erroneously reporting to third party credit evaluators that Plaintiff was deceased, and Plaintiff's subsequent and resultant credit denials, would have each occurred absent CreditWorks and, in fact, did. Second, Experian's violation of 15 U. S.C. § 1681i in failing to reasonably reinvestigate Plaintiff's dispute and failing to remove the inaccurate "deceased" notation would have each occurred absent CreditWorks and, in fact, did occur absent CreditWorks. Without the benefit of discovery, Plaintiff's ability to ascertain what, if anything, CreditWorks has done in relation to Plaintiff's claims is limited; but the burden on a motion to compel arbitration is on the movant, and CreditWorks does not purport to either furnish consumer information to third party credit evaluators, receive consumer disputes, reinvestigate consumer disputes, or remove erroneous credit information (such as a deceased notation) from a consumer's credit file. *I.e.*, none of the actions ***upon which any element of Plaintiff's claims depends*** relate to ECS "Services" provided by CreditWorks. Instead, those tasks are handled by Experian on behalf of all consumers, members, and nonmembers alike. CreditWorks' services as it relates to credit is akin to a news service: it merely reflects to a member-consumer the credit information as maintained by Experian

---

[1] *See, e.g.,* Terms of Use ("TOU") Agreement, ECF 19-6, Ex. 4 at 5 ("[t]he Services and Websites are meant to provide you a means to review your personal finance and/or credit information for ***educational purposes only***") (emphasis added); *id*. at 11 ("[t]he credit report you are requesting from ECS ***is not intended to constitute the disclosure of Experian Credit Bureau*** [elsewhere defined as Experian Information Solutions, Inc., the instant defendant] ***information required by the FCRA*** or similar state laws") (emphasis added); *id*. ("ECS's Services are not related to the free FCRA disclosure that you are or may be entitled to").

in that consumer's credit file,[2] none of which implicates Plaintiff's claims here. In its TOU Agreement, CreditWorks is clear that, in the event a consumer discovers that a credit bureau is reporting inaccurate information, CreditWorks does not offer credit repair or correction services.[3] Nor does CreditWorks provide the FCRA-compliant disclosures that consumers are entitled to.[4] How Plaintiff *discovered* that Experian had violated the FCRA is immaterial.

## II.     Experian's violation(s) occurred independent of Plaintiff's CreditWorks enrollment.

Experian's alleged violations would have occurred absent Plaintiff's enrollment in CreditWorks. Specifically, Experian's erroneous reporting to third parties that Plaintiff was deceased, including to PNC Bank, AfterPay, and others, *see* ECF No. 1, Compl., ¶ 65-70, would have occurred irrespective of his CreditWorks membership. Experian's failure to follow reasonable procedures to ensure accurate reports, its failure to reasonably reinvestigate Plaintiff's dispute, and its failure to remove the deceased notation in response to Plaintiff's dispute, would have all occurred irrespective of CreditWorks. Plaintiff's economic (credit denials) and non-economic (emotional distress) harms would have occurred. In all, no element of Plaintiff's claims and no part of his alleged damages relies on the existence of CreditWorks, and all of the events that Plaintiff has alleged would have occurred also absent Plaintiff's membership in CreditWorks.

## III.    How these facts and the arbitration provision compare with the referenced cases.

**A.     No Meaningful Party Limit**. First, the TOU Agreement's arbitration provision (the "Arbitration Provision") extends to an innumerable number of unknown persons and entities, be it corporate "affiliates," "successors," or "predecessors" of ECS, or other unknown consumers (likely in the millions) who have ever entered into a similar agreement with ECS. *See* Terms of Use ("TOU") Agreement, ECF 19-6, Ex. 4 at 8. Indeed, the Arbitration extends also to "all authorized or *unauthorized* users." *Id*. Thus, if an unknown identity thief, who has *not* signed an ECS agreement, gained unauthorized access to Plaintiff's credit information held by ECS, presumably Plaintiff's civil claim(s) against the thief would be compelled to arbitration. This unthinkably expansive language is a characteristic of the infinite arbitration clause, which "govern all persons or entities with a connection to the container contract," David Horton, *Infinite Arbitration Clauses*, 168 U. Pa. L. Rev. 633, 640 (2020), and is similar to the arbitration provision language that was present in *McFarlane*, *Davitashvili* and *Wexler*.[5]

---

[2] *See* n. 1, *supra*, and n. 3, *infra*.
[3] *See* TOU Agreement, ECF 19-6, Ex. 4 at 18 ("***if you believe that your credit report contains [an] inaccura[cy]*** . . . ***it is your responsibility to contact the relevant credit reporting company***, and follow the appropriate procedures for notifying the credit reporting company . . .") (emphasis added); *id*. ("ECS is not a credit repair organization, and is not offering to sell, provide or perform any service to you for the express or implied purpose of [] improving your credit record"); *id*. at 37 ("If you have questions regarding your credit report or would like to dispute information, you may request an investigation by contacting the credit reporting company that supplied the information, as indicated in your credit report").
[4] *See* n. 1, *supra*.
[5] *McFarlane*, at 277 ("no reasonable person would think that" the arbitration agreement covers "all of [its] affiliates"); *Wexler*, at 501 (the arbitration provision covered "affiliates . . . as well as all authorized or unauthorized users"); *Davitashvili*, at 8 ("affiliates").

**B.     No Time Limit**. Second, the Arbitration Provision here contains no chronological limit, as it covers "claims that arose before this or any prior Agreement," and "claims that may arise after the termination of this Agreement." *See* TOU Agreement, ECF 19-6, Ex. 4 at 8. This is similar to the arbitration provision language in *McFarlane*, at 275 ("for all eternity"); *Davitashvili*, at *8-9 (covering claims that "occurred or accrued before or after [the agreement]" and which "survives after your relationship with Uber ends"); *Wexler*, at 501 ("claims that arose before" and "that may arise after the termination of this Agreement"), and is another characteristic of "infinite provisions" that "have no sunset date." David Horton, *Infinite Arbitration Clauses*, *supra*.

**C.     No Subject Limit – or Strategic Ambiguity**. Third and most troubling is the ambiguous and inconsistent way in which the Arbitration Provision defines the contours of the subject matter which the Arbitration Provision's purports to govern, which – similar to in *McFarlane, Davitashvili,* and *Wexler* – leaves the Arbitration Provision executors without an ability to understand in what circumstances they have agreed to forfeit their Seventh Amendment jury trial rights, or would compel the parties into arbitration even in "absurd" instances that have no nexus to the arbitration provision and which the parties had never contemplated agreeing to.

In one place, the Arbitration Provision contemplates mandatory arbitration applying to "all disputes and claims between us arising out of or relating to this Agreement," TOU Agreement, ECF 19-6, Ex. 4 at 8, though the TOU Agreement never identifies its subject matter or what the term "Agreement" might include, leaving Experian with an argument (which it will undoubtedly use in arbitration, if this matter is compelled there) that the Arbitration Provision applies to all matters bearing on the parties' relationship irrespective of the subject matter, be it services, websites, or injurious vehicle collisions. In another, the Arbitration Provision contemplates mandatory arbitration applying to a more limited subject matter, namely, "all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website," *id*.; however, the Arbitration Provision goes on to assert that "[t]he agreement to arbitrate ***includes, but is not limited to***: claims ***arising out of or relating to any aspect of the relationship between us*** arising out of any Service or Website," *id*. (emphasis added). Thus, a reasonable reader of the Arbitration Provision would be left uncertain as to whether ECS may compel arbitration only of disputes "***directly relating***" to ECS's Services or Websites, or, more broadly, disputes regarding all matters relating to the parties' relationship that are "***arising out of*** any Service or Website."

Moreover, Plaintiff anticipates that, if his claims are compelled to arbitration, Experian will argue to the arbitrator that the difference between "arising out of" and "directly relating to" Services or Websites is anyways immaterial for two reasons: (i) first, because the Arbitration Provision had earlier expressed its broadest intention, namely, to apply to "all disputes and claims between us arising out of or relating to this Agreement," *Id*., and that, therefore, the Agreement – which does not have a defined subject-matter scope – broadly governs all manner of the relationship between the parties; and (ii) second, that to give meaning to the peculiar and doubly-compounded "arising out of" language ("***arising out of*** or relating to any aspect of the relationship between us ***arising out of*** any Service or Website") the Arbitration Provision should be construed as permitting Experian to compel arbitration for ***any*** dispute between the parties that arises from the parties' relationship, because the parties' *relationship* arose out of the Services or Websites.

Plaintiff observes that ECS/Experian has been modifying and honing its Arbitration Provision over a period of years now, often in response to court decisions that failed to compel

matters to arbitration in the way that ECS/Experian had hoped. As such, Plaintiff is left to wonder whether Agreement's hopeless ambiguity is by design. After all, ECS/Experian benefits most when its Agreement is not so infinitely broad as to flout legal precedents and risk being declared unenforceable, but also broad enough that, once in arbitration, Experian may nevertheless maintain a position that the Agreement broadly covers all manner of the parties' relationship and therefore should remain in the arbitral forum.

## IV. Conclusion

Whether on grounds of the innumerable, unknown parties who may compel arbitration, or the unlimited duration of the Arbitration Provision, or by virtue of the Arbitration Provision's likely infinite subject-matter scope, the Arbitration Provision is analogous to *McFarlane, Davitashvili,* and *Wexler* such that the Court should declare it unenforceable. In the alternative, if the Court does not find that the Arbitration Provision lacks an enforceable scope, the Court should nevertheless not reward Experian's strategic ambiguity and, instead, forthrightly opine on the Arbitration Provision's subject-matter limits, such that Experian cannot then turn-around in arbitration and aver that the Arbitration Provision bears an essentially unlimited subject-matter scope – the very argument that the Court would reject here.

Respectfully submitted,       **CONSUMER ATTORNEYS**
                              */s/ Levi Y. Eidelman*
                              Levi Y. Eidelman

                              *Attorneys for Plaintiff Ismael Moreira*

cc:     All Parties (via ECF)